**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 26-CR-20293-DSL**

**UNITED STATES OF AMERICA**

**v.**

CT. EXH- 1

**BLUE OCEAN INTERNATIONAL BANK, LLC,**

**Defendant.**

______________________________/

## FACTUAL PROFFER

The United States of America and Defendant Blue Ocean International Bank, LLC (the "Defendant") and the Defendant's undersigned counsel (collectively, the "Parties"), stipulate to and agree not to contest the following facts and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty to count 1 of the Information, which charges the Defendant with Conspiracy to Willfully Fail to Report Suspicious Transactions, in violation of Title 18 United States Code Section 371. The Parties agree that had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

Beginning in or around October 2016 and continuing until in or about August 2022 (the "relevant period"), the Defendant acting through certain of its officers and employees, conspired to violate the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5318(g), 5322, by agreeing to willfully fail to file reports of suspicious transactions relevant to possible violations of law or regulations with the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of the Treasury. During the relevant period, the Defendant provided its customers access to the U.S. financial system while seeking to shield the customers' financial transactions and activities from U.S.

regulators and law enforcement by willfully conspiring to hinder and prevent the Defendant's compliance personnel from filing required Suspicious Activity Reports ("SARs") with FinCEN.

On or about July 26, 2016, the Defendant was incorporated in the Commonwealth of Puerto Rico. The Defendant was a wholly owned subsidiary of Blue Ocean International Holding LLC, an entity incorporated in Puerto Rico, which in turn was a wholly owned subsidiary of IRC Holding Company, an entity incorporated in the Cayman Islands. During the relevant time, the Defendant's principal office was in San Juan, Puerto Rico.

On or about October 17, 2016, the Office of the Commissioner of Financial Institutions (hereinafter referred to as "OCFI"), an office of the Department of Treasury of Puerto Rico that supervises and regulates Puerto Rico's financial sector, granted the Defendant's application for a license to operate as an International Financial Entity (hereinafter "IFE") pursuant to the International Financial Center Regulatory Act, Act No. 273 (Sep. 25, 2012), as amended by Act No. 154 (Sep. 10, 2014) (hereinafter "IFCR Act").

The Defendant's IFE license permitted it to, among other things, "[c]arry out any banking transactions allowed by [the ICFR Act] in the currency of any country, or in gold or silver, and participate in foreign currency trade," and "[e]ngage in such other activities as are expressly authorized by the regulations or orders of the Commissioner [of OCFI], or are incidental to the execution of the services authorized by this Act and the Regulations of the Commissioner." *See* ICFR Act §§ 12(a)(8), 12(a)(17).

Title 31, United States Code, Section 5318(g), and related implementing regulations, including 31 C.F.R. § 1020.320, required banks to file SARs with FinCEN for any transaction conducted through the bank that involved at least $5,000 in funds, and the bank knew, suspected, or had reason to suspect that the transaction: (i) involved funds derived from illegal activity or was intended or conducted in order to hide or disguise funds or assets derived from illegal activity as

part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation; (ii) was designed, whether through structuring or other means, to evade any regulations promulgated under the BSA; or (iii) had no business or apparent lawful purpose or was not the sort in which the particular customer would normally be expected to engage, and the bank knew of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction. *See* 31 U.S.C. § 5318(g); 31 C.F.R. § 1020.320(a).

After the Defendant began operating as an IFE on or about October 17, 2016, the Defendant constituted a "financial institution" as defined by the BSA and its implementing regulations. *See* 31 U.S.C. § 5312(a)(2)(B); 31 C.F.R. § 1010.100(t)(1); 31 C.F.R. § 1010.100(hhh) (defining "United States" as: "The States of the United States, the District of Columbia, the Indian lands (as that term is defined in the Indian Gaming Regulatory Act), and the Territories and Insular Possessions of the United States"). Accordingly, the Defendant was required to file SARs with FinCEN during the relevant period. *See* 31 U.S.C. § 1010.320 ("Each financial institution (as defined in 31 U.S.C. 5312(a)(2) or (c)(1)) should refer to subpart C of its financial institution part in this chapter for any additional suspicious transaction reporting requirements."); 31 C.F.R. § 1020.320; 81 Fed. Reg. 58425 (Aug. 25, 2016) ("Although banks that lack a Federal functional regulator have not been required to establish an anti-money laundering program, they are required to comply with many other BSA requirements. For example, banks that lack a Federal functional regulator still must file currency transaction reports ('CTRs') and suspicious activity reports ('SARs') and make and maintain certain records.").

The Defendant provided custodial banking services to customers who were non-residents of the United States and its territories. The Defendant opened accounts, accepted deposits, maintained custody of assets, and executed transactions for customers, among other services

provided. The Defendant maintained assets of its customers at banks located in Switzerland, the United Kingdom, the Bahamas, the Continental United States, and elsewhere outside of Puerto Rico.

Bank Executive 1 was a co-founder of the Defendant and the sole owner of IRC Holding Company. Bank Executive 1 served as the president of the Defendant from on or about October 17, 2016, to on or about January 21, 2021. Bank Executive 2 served as the chief executive officer of the Defendant from on or about November 1, 2016, to on or about November 1, 2019. Bank Executive 3 was a co-founder and a former minority owner of the Defendant. Bank Executive 3 served as the chief financial officer of the Defendant from in or around January 2019 to in or around December 2019 and as chief executive officer of the Defendant from in or around December 2019 until or about October 1, 2023. Bank Executive 3 previously served as a consultant to the Defendant.

Throughout the conspiracy, the Defendant executed transactions on behalf of customers while knowing, suspecting, or having reason to suspect that the transactions involved funds derived from illegal activity or had no business or apparent lawful purpose, but the Defendant failed to file timely SARs on those transactions. The Defendant, through Bank Executive 1, Bank Executive 2, Bank Executive 3, and other coconspirators, impeded and prevented the Defendant's compliance officers from filing timely SARs as required by law.

The Defendant, through Bank Executive 1, Bank Executive 2, Bank Executive 3, and other coconspirators, impeded access of the compliance officers to the corporate computer system and access to needed records, including not providing access to transaction records, custodial accounts in foreign countries, and account reconciliations.

The Defendant, acting at the direction of Bank Executive 1, Bank Executive 2, Bank Executive 3, and other coconspirators, failed to conduct required customer due diligence, failed to

conduct required transaction monitoring of customer transactions, failed to investigate suspicious transactions relevant to possible violations of law or regulation, and ultimately failed to file timely SARs on such suspicious transactions.

The Defendant executed transactions on behalf of its customers with other U.S. financial institutions, and at times, those other U.S. financial institutions alerted the Defendant to the suspicious nature of the transactions. The Defendant frequently failed to file SARs even when notified of the suspicious nature of the transactions in question by other U.S. financial institutions.

On or about March 30, 2021, the Defendant entered into a consent order with OCFI to resolve violations of laws and regulations, including deficiencies in its BSA compliance. The consent order required the Defendant to, among other things: (1) implement "a process to reasonably ensure the timely identification and accurate reporting of known or suspected criminal activity, as required by the suspicious activity reporting provisions"; and (2) "improve policies, procedures, processes, and systems for monitoring, detecting, and reporting suspicious activity." Among others, Bank Executive 3 signed the board resolution authorizing a company representative to accept the consent order on behalf of the Defendant.

On or about December 22, 2022, OCFI entered into an agreement with the Defendant, Blue Ocean International Holding LLC, and IRC Holding Limited for the voluntary liquidation and dissolution of the Defendant, effective January 9, 2023.

During the relevant period of the conspiracy, the Defendant operated in the Southern District of Florida in that the Defendant transferred funds from its accounts at financial institutions in foreign jurisdictions to customer accounts at financial institutions located in the Southern District of Florida.

On or about July 7, 2017, the Defendant opened an account for Customer 5. On or about May 29, 2019, Customer 5 transferred approximately $300,000 from his/her account with the

Defendant to a personal account at Financial Institution 1 in the Southern District of Florida. On or about December 12, 2019, Customer 5 transferred approximately $50,000 from his/her account with the Defendant to a personal account at Financial Institution 1. On or about December 17, 2019, Customer 5 transferred approximately $100,000 from his/her account with the Defendant to a personal account at Financial Institution 1. On or about February 6, 2020, Customer 5 transferred approximately $110,000 from his/her account with the Defendant to a personal account at Financial Institution 1. On or about March 2, 2020, Customer 5 transferred approximately $140,000 from his/her account with the Defendant to a personal account at Financial Institution 1.

In or around 2023, after a regulatory examination was conducted by OCFI, the Defendant initiated a look-back review, which was performed by an independent third party. On or about December 27, 2023, as a result of that look-back review, the Defendant filed a SAR naming Customer 5 as a suspect, relating to over $11 million in transactions that occurred from in or around 2017 through in or around 2021. Customer 5 informed the Defendant that his/her source of wealth was from an inheritance, yet the Defendant failed to obtain any evidence of this statement to ensure the funds were not from an illicit source. The account transactions related to a purported shell real estate firm through which Customer 5 was purportedly investing in real estate. The Defendant failed to conduct due diligence on Customer 5 by collecting real estate contracts, deeds of sale, or other documents related to real estate investments. In addition, the Defendant failed to identify the purpose of the transactions, which were almost entirely deposits in Customer 5's accounts rather than payments to the real estate firm for purported investments.

From in or around October 2017 through in or around January 2022, the Defendant, acting through Bank Executive 2, Bank Executive 3, and others, submitted annual certifications to OCFI that falsely attested, among other things, that the Defendant "has implemented the necessary policies and procedures to ensure compliance with applicable provisions of the ... Bank Secrecy

Act" and that the Defendant's management "is responsible for the establishment and implementation of an anti-money laundering program pursuant to the BSA." Bank Executive 2 signed and submitted such BSA compliance certifications on behalf of the Defendant to OCFI on or about September 6, 2018, and on or about September 12, 2019. Bank Executive 3 signed and submitted such BSA compliance certifications on behalf of the Defendant to OCFI on or about November 11, 2020, and on or about January 17, 2022.

The United States and the Defendant agree that these facts, which do not include all of the facts known to the United States and the Defendant, are sufficient to prove the guilt of the Defendant as to the crime of Conspiracy to Willfully Fail to Report Suspicious Transactions, in violation of Title 18 United States Code Section 371 as alleged in the Information.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 10/28/2026 By: ______________________
FELIPE PLECHAC-DIAZ
ASSISTANT UNITED STATES ATTORNEY

Date: 10/28/2026 By: ______________________
MANUEL MIRANDA
ATTORNEY FOR DEFENDANT

Date: 10/28/2026 By: ______________________
ANDRES FERNANDEZ
ATTORNEY FOR DEFENDANT

Date: 10/23/2026 By: ______________________
JEAN LOUIS GEYR
DIRECTOR AND CORPORATE
REPRESENTATIVE OF BLUE OCEAN
INTERNATIONAL BANK LLC